## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>WEBFLOW, INC.,<br><br>    Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud") files this Complaint for patent infringement against Defendant Webflow, Inc. (hereinafter, "Defendant" or "Webflow") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Reference |
|---|---|---|
| 1. | 7,209,959 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209959<br><br>https://patents.google.com/patent/US7209959B1/en?oq=7%2c209%2c959 |
| 2. | 7,398,298 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7398298<br><br>https://patents.google.com/patent/US7398298B2/en?oq=7398298 |
| 3. | 8,607,139 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8607139<br><br>https://patents.google.com/patent/US8607139B2/en?oq=8%2c607%2c139 |

|    | U.S. Patent No. | Reference |
|----|----|----|
| 4. | 8,615,555 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8615555 |
|    |    | https://patents.google.com/patent/US8615555B2/en?oq=8%2c615%2c555 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4. Based upon public information, Webflow is a corporation duly organized and existing under the laws of the state of Delaware since September 26, 2012.[1]

5. Based upon public information, Webflow lists its Headquarters as 4398 11th Street, 2nd Floor, San Francisco, California, 94103 where it may be served through its registered agent, Linda Tong.[2]

## JURISDICTION AND VENUE

6. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

8. The Court has personal jurisdiction over Webflow because: Defendant has

---

[1] Source: Delaware Secretary of State website (last visited November 12, 2024)

[2] Source: California Secretary of State website (last visited November 12, 2024)

minimum contacts within the State of Delaware and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District; Defendant has sought protection and benefit from the laws of the State of Delaware; Defendant regularly conducts business within the State of Delaware and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and in this District.

9. More specifically, Defendant directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Delaware, and in this District.

10. Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District directly, and offers its services, including those accused of infringement here, to customers and potential customers located in the United States, the State of Delaware, and in this District.

11. Based upon public information, Defendant is incorporated under the laws of Delaware.

12. Therefore, venue is proper in this District pursuant to 28 U.S.C. §1400(b).

## THE ACCUSED PRODUCTS

13. Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.webflow.com through which it advertises, sells, offers to sell, provides and/or educates customers about its website hosting platforms and the Accused Products.[3]

14. Defendant offers at least the following products and services (hereinafter, the "Accused Products") that infringe one or more claims of the Patents-in-Suit:

---

[3] *See* https://webflow.com/ (last visited December 3, 2024)

- Webflow Web Hosting network infrastructure hosting multiple domains;
- Webflow website management tools for web-based user and admin roles for customer website management including Webflow Dashboard;
- Webflow Forms for customers to create website pages and forms; and
- Webflow User Accounts for user account management including adding users

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,209,959

15. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-14 above as though fully set forth in their entirety.

16. U.S. Patent No. 7,209,959 (the "'959 patent") was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000. The '959 patent is entitled "Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network." *See* '959 patent at p. 1.

17. The claims of the '959 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network activity for individual clients and groups of clients for, among other reasons, security, traffic management, and routing purposes.

18. The written description of the '959 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

19. DataCloud owns all substantial rights, interest, and title in and to the '959 patent,

including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

20. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '959 patent.

21. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its website network infrastructure for hosting multiple domains ("Webflow Web Hosting").[4]

22. Upon information and belief, Webflow Web Hosting meets each and every step of at least Claim 1 of the '959 patent, either literally or equivalently. Defendant has infringed one or more claims of the '959 Patent because Webflow Web Hosting provides a method of, in response to a request (*e.g.,* "Client Hello") by a client to initiate communication with a destination website (*e.g.,* webflow.com, affiliates.webflow.com, community.webflow.com, discourse.webflow.com, developers.webflow.com), setting up a forwarding session (*e.g.*, from the internet to a WWW server) between the client (*e.g.*, internet device) and a destination server corresponding to the destination website (*e.g.*, WWW server), the forwarding session employing a forwarder disposed between (*e.g.*, a front-end server switch) the client and the destination server to forward packets sent from the client to the destination server and to forward packets sent from the destination server to the client (*e.g.,* bilateral communications); employing the forwarder (*e.g.,* front-end server

---

[4] *See* https://web.archive.org/web/20200215101726/https:/webflow.com/ (last visited December 3, 2024)

switch), to transfer packets (*e.g.*, ethernet or others) between the client (*e.g.*, internet device) and the destination server (*e.g.*, WWW server) during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder (*e.g.*, the WWW server has a direct TCP connection between a local IP address and a client IP address, each being different; thus, neither the client or the destination server is aware of the employment of the forwarder); employing a controller configured to communicate (*e.g.*, firewall) with the forwarder (*e.g.*, front-end server switch) and a domain name server (*e.g.*, a DNS), wherein the controller queries the domain name server to resolve the name of the destination website (*e.g.,* affiliates.webflow.com, community.webflow.com, discourse.webflow.com, developers.webflow.com) associated with the destination server (*e.g.*, WWW server) and initiates communication (*e.g.*, between the firewall and front-end server switch) with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server; employing a deceiver (*e.g.*, router) configured to communicate with the controller (*e.g.*, firewall) and the client (*e.g.*, internet device), wherein the deceiver receives the request by the client to initiate communication (*e.g.*, from the internet to the router) with the destination website (*e.g.*, affiliates.webflow.com, community.webflow.com, discourse.webflow.com, developers.webflow.com on a WWW server) and initiates the controller to query the domain name server to resolve the name of the destination website associated with the destination server (*e.g.*, the router both (i) receives the request and (ii) sends the data from the WWW server in a manner that makes the router appear to be the source of the data, when the source of the data is actually the WWW server); and in response to the controller (*e.g.*, router) receiving the answer from the domain name server and initiating communication with the forwarder initiating the forwarding session.

23. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

24. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,398,298</u>

25. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-14 above as though fully set forth in their entirety.

26. U.S. Patent No. 7,398,298 (the "'298 patent") was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803 which was filed on March 23, 2007. The '298 patent is entitled "Remote Access And Retrieval Of Electronic Files." *See* '298 patent at p. 1.

27. The claims of the '298 Patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote server.

28. The written description of the '298 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29. DataCloud owns all substantial rights, interest, and title in and to the '298 Patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and

to collect damages for all relevant times.

30.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 Patent.

31.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its tools for web-based user and admin roles for customer website management, including Webflow Dashboard ("Webflow website management tools").[5]

32.     Upon information and belief, the Webflow website management tools meet each and every step of at least Claim 13 of the '298 patent, either literally or equivalently. Defendant has infringed one or more claims of the '298 Patent because Defendant, by its provision of the Webflow website management tools, provides a method for remotely controlling data directory structures (*e.g.,* webpages and functions accessible to discrete users) across at least one communications network (*e.g.,* Internet) by way of its administrative and user roles. The Webflow website management tools have a computer server (*e.g.,* WWW server), the computer server coupled to the communications network (*e.g.,* Internet); a remote data directory structure management computing application (*e.g.,* the Webflow website management tools) operating on the computer server (*e.g.,* WWW server) to process received requests for remote data directory management (*e.g.,* adding users, *etc*.) of desired data residing in directory structures by participating users (*e.g.,* users that have been assigned to Owner, Admin, Member, other roles,

---

[5] *See*
https://web.archive.org/web/20220216161054/https:/university.webflow.com/lesson/workspace-roles-and-permissions  (last visited December 3, 2024).

Page | 8

*etc.*, or site-by-site, "site admin," "can design & publish," and "can design"); and a profile data store (*e.g.,* a secure SQL server/database) comprising information relating to the data and data directory structures (*e.g.*, information on permissions, activations, files, and operations available to users in an organization) accessible to each of the participating users (*e.g.*, of an organization) wherein the profile data store is queried for the data directory structures accessible to each of the participating users (*e.g.*, role definitions indicate directory structure for each role to determine the user's abilities/permissions/activations), wherein further a single directory structure (*e.g.*, abilities/permissions/roles for users must be selected in the user/account settings) from among a plurality of the data directory structures associated with the profile data store (*e.g.*, the available account access settings for users) is selected by each of the participating users for modification (the invited user can accept the invitation or access).

33. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

34. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,607,139

35. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-14 above as though fully set forth in their entirety.

36. U.S. Patent No. 8,607,139 (the "'139 patent") was issued on December 10, 2013 after full and fair examination by the USPTO of Application No. 10/834,595 which was filed on April 29, 2004. The '139 patent is entitled "System and process for managing content organized in a tag-delimited template using metadata." *See* '139 patent at p. 1. A Certificate of Correction

was issued on June 24, 2014.

37. The claims of the '139 Patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve systems and processes for managing content organized in a tag-delimited template using metadata.

38. The written description of the '139 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39. DataCloud owns all substantial rights, interest, and title in and to the '139 Patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

40. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '139 Patent.

41. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '139 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its web-based tools for customers to create website pages including forms ("Webflow Forms").[6]

---

[6] *See* https://help.webflow.com/hc/en-us/articles/33961347548563-Forms-overview (last visited December 3, 2024).

42. Upon information and belief, Webflow Forms meets each and every step of at least Claim 8 of the '139 patent, either literally or equivalently. Defendant's provision of Webflow Forms has infringed and one or more claims of the '139 Patent because it provides a method for displaying a graphical interface based on a metadata template ("Form in Webflow") that has an object that represents a structure and an appearance of a web page wherein the object is based on a class (*e.g.,* a template where you can add/edit) stored in a base template, and wherein the graphical interface comprises an input field corresponding to the object and defining an input property of a data entry field and generating a data entry form comprising the data entry field wherein the data entry field is configured to accept input corresponding to content of the object and a web page generator configured to generate the web page based on the metadata template wherein the web page comprises the content represented by the input.

43. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

44. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,615,555

45. Plaintiff re-alleges and incorporates by reference each of the paragraphs 1-14 above as though fully set forth in their entirety.

46. U.S. Patent No. 8,615,555 (The "'555 patent") was issued on December 24, 2013 after full and fair examination by the USPTO of Application No. 12/169,074 which was filed on July 8, 2008. The '555 patent is entitled "Remote Access And Retrieval Of Electronic Files." *See* '555 patent at p. 1.

47. The claims of the '555 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote server.

48. The written description of the '555 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49. DataCloud owns all substantial rights, interest, and title in and to the '555 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

50. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '555 patent.

51. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '555 patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Webflow user account management including adding users ("Webflow User Accounts").[7]

52. Upon information and belief, Webflow User Accounts meets each and every step

---

[7] *See* https://help.webflow.com/hc/en-us/articles/33961356432147-Webflow-User-Accounts-overview (last visited December 3, 2024).

of at least Claim 1 of the '555 patent, either literally or equivalently. Webflow User Accounts has infringed one or more claims of the '555 patent because it provides a method for providing remote data directory structure management capabilities to a requestor (*e.g.,* user-related Collections) across a communications network (*e.g.,* the Internet) to receive a first request over a communications network for management of data directory structures recorded on a memory device (*e.g.,* a secure SQL server/database stored on the memory of a server), query a profile data store from which is selected one of several of data directory structures and providing information about the selected data directory structure (*e.g.,* information on permissions, files, and operations available to users, account users, and administrators, for instance), receive a second request for a data file contained within the selected data directory structure and specifying an electronic address that is not associated with the requestor (*e.g.,* a request for a new user for permissions, access to files, or to control processes accessing files), sending the data file to the specified electronic address through a system that does not include the requestor (*e.g.,* where the user is not an authorized user), create and send a message that the data file has been sent that contains the electronic address and describes the system used, receiving a third request describing how to modify the data directory structure, and modify the data directory structure as requested (granting the permission, access, or control sought).

53. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

54. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

55. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

56. Plaintiff respectfully requests the following relief:

   A. An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

   B. An award of damages to be paid by Defendant adequate to compensate Plaintiff Defendant's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

   C. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

   D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

   E. Any further relief that this Court deems just and proper.

Dated: December 4, 2024

Respectfully submitted,

**STAMOULIS & WEINBLATT LLC**

*/s/ Stamatios Stamoulis*

Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street - Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

*For Plaintiff DATACLOUD TECHNOLOGIES, LLC*

\* admission *pro hac vice* anticipated

**LIST OF ATTACHMENTS**
1) Civil Cover Sheet